J-S39016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.C.C.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.T., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 859 MDA 2023 |

Appeal from the Decree Entered May 18, 2023
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
88331

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED DECEMBER 14, 2023**

J.T. ("Father") appeals from the decree terminating his parental rights as to his minor child, A.C.C.T. ("Child"). We affirm.

Child was born in January 2022. N.T., 5/15/23, at 15. At that time, Berks County Children and Youth Services ("BCCYS") had an open case with Child's mother ("Mother")[1] and Father as to Child's sibling. **Id.** at 17. Mother's and Father's parental rights were involuntarily terminated as to that child in August 2021. After BCCYS received a report that Child was born, it took emergency custody of Child due to the parents' noncompliance with any services for Child's sibling and the fact that their parental rights were recently terminated as to Child's sibling. **Id.** BCCYS had concerns with the parents' lack of parenting skills, mental health, domestic violence, and drug and alcohol

_____

[1] Mother is not a party to this appeal.

issues. *Id.* at 18. Child was placed in a foster home and has lived in the same home since the inception of this case. *Id.*

In September 2022, BCCYS filed a petition for the involuntary termination of Father's parental rights. The court held a hearing on the petition on May 15, 2023. Father represented himself at the hearing.[2]

BCCYS presented the testimony of case supervisor Angeline Knarr. Knarr testified that Father's goals were to attend parenting education classes, undergo mental health and domestic violence evaluations and follow any recommended treatment, attend supervised visits with Child, and submit to random drug screens. *Id.* at 19. Knarr stated that Father initially participated in parenting education classes but was subsequently discharged for noncompliance. *Id.* at 25-26. She stated that Father participated in a mental

_____

[2] Father was represented by court-appointed counsel throughout the proceedings in this case leading up to the termination hearing. However, at a hearing in December 2022, Father requested that his counsel withdraw, and the trial court granted his request. *See* Order, 12/19/22.

At the outset of the termination hearing on May 15, 2023, Father reiterated his request to proceed *pro se*. N.T. at 5-6. In response, the trial court conducted a thorough colloquy on the record, in which the court informed Father of his right to be represented by an attorney without charge, his right to present evidence and to cross-examine witnesses, the fact that he did not have the burden of proof, and that he would be held to the same standards as an attorney despite being *pro se*. *Id.* at 8-12. Accordingly, Father knowingly waived his right to counsel and the trial court properly permitted him to proceed *pro se* at the termination hearing. *Cf. In re X.J.*, 105 A.3d 1, 7 (Pa.Super. 2014) (vacating termination decree and remanding where mother was never advised of her right to counsel in termination proceedings). We further note that Father is represented by counsel in this appeal and did not raise an issue with Father proceeding *pro se* at the termination hearing.

health evaluation, which recommended that he attend individual therapy. *Id.* at 27. However, he failed to follow up with individual therapy. *Id.* 27, 31. Knarr also stated that Father failed to undergo random drug screens. *Id.* at 38.

Knarr further testified that Father underwent a psychological evaluation for parental fitness conducted by Dr. Laura M. Fritts. *Id.* at 32. Dr. Fritts opined that Father would not benefit from a mental health program because he did not perceive himself as having any mental health issues. *Id.* at 34. Dr. Fritts recommended that Father maintain employment and housing, attend supervised visitation, and continue parenting education. *Id.* at 35. Dr. Fritts also opined that Child should remain in her current foster home. *Id.*

Knarr testified that Father visited Child "[v]ery sporadically." *Id.* He last visited Child in September 2022, over seven months before the termination hearing. *Id.* at 36. Knarr stated that Father participated in approximately 16 full visits and 16 partial visits out of 124 visits offered to him. *Id.* at 58-59. The visits were always supervised at the agency and never progressed to unsupervised visits. *Id.* at 24. Knarr stated that there were no concerns with the visits when Father attended visits. *Id.* at 56. However, Child would sometimes cry during the visits because she did not recognize Father due to the time between visits. *Id.* at 69. Knarr testified that Father had not sent any cards, gifts, or letters to Child since she had been in foster care. *Id.* at 37.

Knarr indicated that at one point, Father informed BCCYS that he had concerns because Child had bruises and bug bites on her at a visit. *Id.* at 62.

Knarr stated that a ChildLine report was made, but it was later determined to be unfounded for any type of child abuse. *Id.* at 63-64.

Knarr did not know if Father's housing was appropriate because Father refused BCCYS from entering his home. *Id.* at 23. Knarr stated that Father reported he was employed but had not produced any documentation verifying his employment. *Id.* at 40. Knarr testified that Father was discharged for casework services for noncompliance by at least five providers. *Id.*

Knarr stated that Child is thriving in her foster home, which is a pre-adoptive home. *Id.* at 42. She testified that Child has a very loving, affectionate, and close bond with her foster parents, and they meet all her needs. *Id.* at 42-43, 69. Knarr indicated that Child's older sibling also lives in the same foster home. *Id.* at 68-69. Knarr stated that since Child was born, she has never been in her biological parents' care and likely would not recognize them at this time. *Id.* at 41, 69. Knarr opined it was in Child's best interest if Father's parental rights were terminated and Child would suffer no detrimental impact. *Id.* at 43, 69-70.

Father testified on his own behalf. He stated that he has a total of nine children, but none of them live with him. *Id.* at 73, 79-80. However, he testified that he loves his children and "will continue to fight for [his] children." *Id.* at 72-73. At the time of the hearing, he was incarcerated for failing to pay child support. *Id.* at 83. Father stated that prior to his incarceration, he had been employed as a handyman at an appliance store for five months. *Id.* at 75, 83. Father's plan was to move with his children to his home in Puerto Rico.

*Id.* at 82. Father testified that he sometimes could not attend visits with Child because of his work schedule. *Id.* at 72. Father could not recall the last time he visited Child. *Id.* at 79.

After the hearing, the trial court found that BCCYS proved by clear and convincing evidence that Father's parental rights should be terminated under Section 2511(a)(1), (2) and (5) and Section 2511(b) of the Adoption Act.

Father filed a notice of appeal and raises the following issue:

> Whether the [t]rial [c]ourt abused its discretion and/or erred as a matter of law in determining that the parental rights of [Father] should be forever terminated under Title 23, 23 Pa.C.S.A. § 2511(a)(1), (2) and (5) (Supp. 2023)?

Father's Br. at 7.

Father argues BCCYS failed to present clear and convincing evidence to warrant the termination of his parental rights because he participated in at least some of his court-ordered services. *Id.* at 9. He maintains he attended parenting education classes in the beginning and attended visitation with Child until September 2022. *Id.* at 15-16. He points out that BCCYS agreed that there were no safety or parenting concerns during his visits with Child. *Id.* at 16. Father also highlights that he unilaterally brought to the attention of BCCYS his concerns that Child had bruises at one of the visits and made a ChildLine report. *Id.* at 16-17. He further stresses that although he did not follow up with individual therapy, the psychologist who conducted his mental health evaluation determined he would not benefit from further mental health treatment because Father did not perceive that he required it. *Id.* at 16.

- 5 -

Father also points to his testimony that he can financially support Child due to his employment. ***Id.*** at 17.

We review an order involuntarily terminating parental rights for an abuse of discretion. ***In re G.M.S.***, 193 A.3d 395, 399 (Pa.Super. 2018). We "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citation omitted). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." ***In re Adoption of K.C.***, 199 A.3d 470, 473 (Pa.Super. 2018). We will reverse a termination order "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012).

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. ***In re Adoption of K.C.***, 199 A.3d at 473. Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." ***Id.*** (citation omitted).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. ***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007). Under this provision, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* (citations omitted). To affirm the termination of parental rights, this Court need only affirm the trial court's decision as to any one subsection of Section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

Here, the court found termination proper under Sections 2511(a)(1), (2), and (5), as well as under Section 2511(b). As only one basis for termination under 2511(a) is necessary, we will focus on the court's termination of Father's parental rights under Section 2511(a)(1). That section provides that a parent's rights to a child may be terminated if:

> The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

Under Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental

duties." ***In re Z.S.W.***, 946 A.2d 726, 730 (Pa.Super. 2008). A parental obligation is a "positive duty which requires affirmative performance" and "cannot be met by a merely passive interest in the development of the child." ***In re C.M.S.***, 832 A.2d 457, 462 (Pa.Super. 2003) (citation omitted). Notably,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

***In re B.,N.M.***, 856 A.2d 847, 855 (Pa.Super. 2004) (citations omitted).

Here, based upon our review of the record, the trial court did not abuse its discretion in finding BCCYS established grounds for termination under Section 2511(a)(1) by clear and convincing evidence. Child has been in the custody of BCCYS since shortly after birth and has been cared for since then by foster parents. Father had not visited Child since Child was less than nine months old and only attended approximately 32 out of 124 visits. The last time Father saw Child was more than seven months before the termination hearing. Father also did not send any cards or gifts to Child, and Child has never been in Father's care. The evidence was sufficient to establish termination under Section 2511(a)(1) due to Father's failure to perform parental duties for at least six months before the filing of the petition.

The evidence was likewise sufficient to support termination of Father's parental rights under Section 2511(b). The focus under Section 2511(b) is not on the parent, but on the child. *In re Adoption of R.J.S.*, 901 A.2d 502, 508 (Pa.Super. 2006). Under Section 2511(b), the trial court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the best interest of the child. 23 Pa.C.S.A. § 2511(b). This inquiry involves assessment of "[i]ntangibles such as love, comfort, security, and stability[.]" *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005). The court must also examine the parent-child bond, "with utmost attention to the effect on the child of permanently severing that bond." *Id.* However, the "mere existence of an emotional bond does not preclude the termination of parental rights." *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011). Rather, the court must consider whether severing the bond "would destroy an existing, necessary and beneficial relationship." *Id.* (citation omitted). The trial court must also examine any pre-adoptive home and any bond between the child and the foster parents. *In re T.S.M.*, 71 A.3d at 268.

Here, the trial court determined that BCCYS had established by clear and convincing evidence that termination was proper under Section 2511(b). The record supports the court's finding. Knarr testified that Child is thriving in her foster home, which is a pre-adoptive home. She indicated that Child has a close and loving bond with her foster parents, with whom she has lived with her entire life, and looks to them to have her needs met. Child's older sibling

also lives in the same foster home. Although the court recognized that Father loves Child, it determined that there was very little bond between them since Father has had minimal contact with Child since she was born. **See** Amended 1925(a) Opinion, filed 8/3/23, at 4. Indeed, Knarr said Child would not recognize her biological parents. The evidence showed that Child would suffer no detrimental impact if Father's parental rights were terminated. Accordingly, we agree with the court's finding that BCCYS proved by clear and convincing evidence that termination of Father's parental rights was in Child's best interest.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/14/2023